UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JACK T. KRAUSER, D.M.D., an individual,

    Plaintiff,

v.

BIOHORIZONS, INC., a Delaware corporation,
BIOLOK INTERNATIONAL, INC., a
Delaware corporation, and BIOHORIZONS
IMPLANT SYSTEMS, INC., a Delaware
corporation,

    Defendants.

CASE NO.: 9:10 CV 80454-MARRA

## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

Defendants, BioHorizonns, Inc., BioLok International, Inc. and BioHorizons Implant Systems, Inc., move this Court, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for an order dismissing the Amended Complaint. By this action, Plaintiff seeks a declaratory judgment rescinding an October 1996 Settlement Agreement (the "Settlement Agreement") entered into between the parties which by its terms has been fully performed and has concluded.

However, Plaintiff has failed to adequately allege a breach of the Settlement Agreement or entitlement to the other relief requested.

## PRELIMINARY STATEMENT AND STATEMENT OF FACTS

Plaintiff, Dr. Jack Krauser, is a dentist who claims to have designed a dental implant system in 1987, which he patented in 1994. (Am. Compl. ¶ 15.) In his Amended Complaint, Dr. Krauser claims that Minimatic, a predecessor company to BioLok, misappropriated Dr. Krauser's ideas in the 1988-1993 time frame by incorporating them into BioLok's dental implant systems, regulatory filings with the FDA (so called 510(k) filings), and patents. (Am. Compl. ¶¶

18-28.) Dr. Krauser's claims against Minimatic were previously litigated in two lawsuits Dr. Krauser initiated in 1993 and 1994. Those lawsuits were resolved (after two bankruptcy proceedings of Minimatic) by the parties pursuant to the Settlement Agreement, which was approved by the Bankruptcy Court as part of Minimatic's plan of reorganization in February 1997. Under the Settlement Agreement, Dr. Krauser released all of his claims in existence as of February 1997[1], and in return, Minimatic (now BioLok) agreed to pay certain royalties and other consideration over the course of a ten (10) year period, which ended on October 31, 2006. For ten years, Dr. Krauser accepted BioLok's payments and statements without once disputing the timeliness or the amounts owed. Importantly, he never served any notice of default.

Now, years after the ten-year royalty term came to an end, Dr. Krauser alleges a nebulous breach of the Settlement Agreement, claiming that BioLok has, among other things, underpaid. Dr. Krauser seeks to rescind and unwind the entire Settlement Agreement and relitigate claims that were resolved in 1996, more than 13 years ago.

In this case, filed on March 4, 2010 and removed by Defendants to this Court on April 1, 2010, Dr. Krauser is seeking "a declaratory judgment" that Defendants have defaulted under the Settlement Agreement by failure to timely pay royalties and provide sales reports and audit rights. (Am. Compl. at 20.) Plaintiff seeks to rescind the Settlement Agreement and Release, reinstate and litigate the released, underlying claims, and be declared "the inventor and owner of the subject matter set forth in <u>all of the Defendants' patents</u> based on his '476 patent, … the inventor and owner of the subject matter set forth in <u>all of the Defendants' 510(k) registrations</u> based on his '476 Patent, … [and] the inventor and <u>owner of the Dental Implant System, now commercially known as the BioHorizons Tapered Internal Implant System</u> …." (Am. Compl. at

---

[1] Attached hereto as Exhibit "A" is the release executed by Dr. Krauser in favor of Defendants' predecessor, which release is part of the Settlement Agreement (the "Release").

{Client Files\B236\001\00062606.DOC V1}

20- 21) (emphasis added).

The Amended Complaint should be dismissed for three reasons. First, the Amended Complaint fails to satisfy the pleading requirements set forth by the Supreme Court in *Twombly*. Indeed, the Amended Complaint is rife with conclusory allegations and legal conclusions. (*E.g.*, Am. Compl. ¶¶ 28, 30) This, however, is not enough and it should be dismissed. Second, Dr. Krauser's purported required notices of default were inadequate and untimely, and third, he has not tendered the money paid under the Settlement Agreement he is seeking to rescind. Thus, his claim is deficient.

Moreover, the Court should dismiss the Amended Complaint to the extent it seeks a declaratory judgment that Dr. Krauser is a co-inventor/owner of eight BioLok patents, regulatory filings and commercial products because not only were those claims previously released, but Dr. Krauser has not complied with the basic pleading requirements for inventorship.

## ARGUMENT

### THE CONCLUSORY ALLEGATIONS OF THE AMENDED COMPLAINT DO NOT MEET THE REQUISITE PLEADING REQUIREMENTS

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss when a complaint fails to state a claim upon which relief can be granted. A complaint must as a threshold matter provide "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2). *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* A complaint "requires more than labels and conclusions." *Id.* A "formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555, as "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, a wholly conclusory

statement of a claim cannot, without more, survive a motion to dismiss. *See Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1303 (11th Cir. 2007) (citation omitted).

Further, the *Twombly Court* held that as a "threshold requirement" a complaint must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* at 557. Subsequently, in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Court described the "two-pronged approach" to be applied in determining the adequacy of a complaint. First, the court must determine whether a complaint contains factual allegations, as opposed to legal conclusions. *Id.*, 129 S. Ct. at 1949. In this analysis, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Daniel v. Edgerton,* No. 08-CV-13997, 2009 WL 2392789, at *3 (E.D. Mich. Aug. 3, 2009). Second, the facts that are pled must show a plausible claim for relief. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not '<u>shown</u>' -- that the pleader is entitled to relief." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950) (emphasis added).

The Amended Complaint seeks a myriad of forms of relief premised upon causes of actions which are not adequately pled. Couching his claim under the rubric of a declaratory judgment action does not enable Plaintiff to avoid the pleading requirements for the underlying claims established in *Twombly* and *Iqbal*.

As set forth in the Wherefore clause of the Amended Complaint, Plaintiff seeks a declaration of the following:

- default of the Settlement Agreement;
- determination that Plaintiff is the inventor and owner of the subject matter of all of Defendants' patents based on his '476 Patent;

- determination that he is the inventor and owner of the subject matter set forth in Defendants' 510(k) registrations based on his '476 Patent; and
- declaring that he is the owner and inventor of Defendants' Dental Implant System.

Despite articulating the general relief sought, the Amended Complaint fails to assert the requisite elements to recovery on such claims. Instead, Plaintiff alleges woefully inadequate, ambiguous and conclusory allegations and legal conclusions. He has not come close to satisfying the pleading standard articulated by the Supreme Court. The facts as pled do not show a plausible claim for relief as required under *Twombly*. As such, Plaintiff's failure to allege the grounds for his entitlement to the relief requested requires dismissal of the action. *Henderson v. Reid*, No. 09-15149, 2010 WL 1220732 (11th Cir. March 30, 2010).

### A. <u>Defendants Alleged Breach Of The Settlement Agreement</u>

By the terms of the Settlement Agreement, upon an event of default, Plaintiff was required to provide to BioLok proper, <u>written</u> notice of the default and the right to cure. (Am. Compl. ¶45). Dr. Krauser had to provide five- and ten-day cure periods for monetary and non-monetary violations, respectively. Despite such clear direction, the Amended Complaint fails to adequately allege this condition precedent to the commencement of a claim for breach.

While the Amended Complaint alludes to "prior demands" (Am. Compl. ¶¶ 54, 55), the first actual purported notice of non-compliance BioLok received from Dr. Krauser that even attempted to specify the non-compliance, the first condition for an Event of Default, was on December 14, 2009. (Am. Compl. ¶ 60; Ex. L) This notice came more than three years after the ten-year term of the Settlement Agreement expired on October 31, 2006 and even <u>after</u>

commencement of a prior, October 2009 action against BioLok. However, this notice did not provide any necessary detail for the alleged defaults. The notice stated in a conclusory fashion:

> [] Failure to complete payments due on *the* collective sum of $720,000; and,
> [] as to products of any kind or nature for dental implantology sold,
> Failure to make payments fully;
> Failure to make payments timely, to wit by the 15th of each month;
> Failure to provide reports, (Am. Compl. Ex. L, at 2)

As the conclusory--"the-defendant-unlawfully-harmed-me"--complaint does not unlock the doors of discovery under *Iqbal*,[2] a conclusory notice of default, just saying no more than "you owe me more money," similarly does not constitute an adequate notice of default. As a matter of law, a cure notice "must list with enough particularity the performance failures which have placed the contract in danger of termination for default." *Hannon Elec. Co. v United States*, 31 Fed. Cl. 135, 148 (Fed. Cl. 1994), *aff'd*, 52 F.3d 343 (Fed. Cir. 1995) (table) (citing *Int'l Verbatim Reporters v. United States*, 9 Cl. Ct. 710, 721 (Cl. Ct. 1986)). Clearly, Plaintiff's notice does not comply.

As stated above, the Settlement Agreement provided for payment over a course of ten years. The Amended Complaint does not state that Krauser had sent notices to Defendant during that time period, but instead alleges that on December 14, 2009 Krauser provided the Company with a default notice. However, that notice does not provide even the most rudimentary reasons for the alleged default. It fails to allege the amount of underpayment, the time period over which the nonpayment or nonperformance occurred, and the specific products for which such amount is owed. Without this necessary information, it is next to impossible for Biolok to understand, let alone cure, the alleged default. Moreover, before that date and with no prior notices of default, Plaintiff had already commenced an action against Defendants. This alone proves that

---

[2] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

{Client Files\B236\001\00062606.DOC V1}

6

Defendants were given no opportunity to cure, which is a requirement under the Settlement Agreement. This claim must be dismissed.[3]

The conclusory allegations in the Amended Complaint are no better and provide no further detail. The Amended Complaint fails to adequately allege any specific facts as to how, when or why such a default occurred. It simply states a default exists. To this day, Dr. Krauser has failed to specify the bases for Biolok's alleged default, plainly depriving Biolok of any opportunity to cure. Removing the legal and conclusory allegations from the Amended Complaint, Dr. Krauser can point to no facts showing that he is entitled to the relief sought. His Amended Complaint must be dismissed. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

Importantly, all of the relief sought by Plaintiff is premised on the breach of the Settlement Agreement. (Am. Compl. ¶¶ 66-68). Indeed, all of his purported rights flow from his claim of breach of the Settlement Agreement. (*Id.*). Because BioLok has fully complied with the Settlement Agreement, Dr. Krauser has failed to-- and cannot-- state a claim for breach, the entire action must be dismissed.

**B.    The Amended Complaint Fails To State A Claim For Inventorship Or Ownership Of BioLok's Patents, Products And Regulatory Filings**

The Amended Complaint also fails to meet the requisite pleading requirements for, *inter alia*, inventorship and ownership rights of BioLok's patents. Specifically, in his Amended Complaint, Dr. Krauser seeks a declaratory judgment "finding and declaring that he is the inventor and owner of the subject matter set forth in all of Defendants' patents based on his 476

---

[3] In *Alliance Metals, Inc of Atlanta v Hinely Indus., Inc.*, 222 F.3d 895 (11th Cir. 2000), the court dismissed an action when there had been a failure to provide a contractually required notice and opportunity to cure. In doing so, the Court rejected the argument that the breach of one party excused the performance of the other, explaining that such a holding would "effectively render meaningless contractual 'notice and cure' requirements." *Id.* at 903.

Patent...." (Am. Compl., Wherefore clause (g)).[4] Similarly, Dr. Krauser seeks a declaratory judgment that he is the inventor and owner of certain BioHorizons products and 510(k) regulatory filings that are allegedly based on his 476 Patent, including BioHorizon's Tapered Internal Implant System. (Am. Compl., Wherefore clauses (h) and (i)). Apart from his *conclusory allegations* and legal conclusions that they are somehow "based on" his '476 Patent, the Amended Complaint fails in any way to plead the necessary elements to succeed on such a claim. Indeed, the Amended Complaint does not identify any specific contributions he allegedly made to the inventions claimed in any of BioLok's patents, products or 510(k) regulatory filings. He just concludes, without pleading any underlying facts, that he is entitled to the relief sought. As such, Dr. Krauser's claims should be dismissed for failure to adequately plead facts, rather than legal conclusions, of inventorship.

In evaluating the sufficiency of a complaint, the Supreme Court "found it necessary first to ... begin by taking note of the elements a plaintiff must plead to state a claim" at issue, here a claim of joint inventorship and correction of inventorship. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1947 (2009). Specifically, Section 256 of the patent laws creates a cause of action for correction of inventorship "[w]henever ... through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part...." 35 U.S.C. § 256 (2010). The well-established case law provides guidance as to the elements of this cause of action a purported co-inventor must plead and prove. **First**, "to be a joint inventor, an individual must make a contribution to the conception of the <u>claimed invention</u> that is not insignificant in quality, when that contribution is measured against the dimension of the full invention." *Fina Oil & Chem. Co.*

---

[4] The Amended Complaint identifies eight BioLok patents that Dr. Krauser claims he is an inventor on U.S. Patent Nos. 5,415,545; 5,964,766; 6,149,432; 6,375,464; 6,406,296; 6,419,491; 6,454,569; and 6,648,643. (Am. Compl. ¶ 29-30; Ex. F).

*v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) (emphasis added). "Conception is the touchstone of inventorship, the completion of the mental part of invention." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).[5]

**Second**, "the alleged joint inventor ... must demonstrate that his labors were conjoined with the efforts of the named inventors. Joint inventorship under section 116 can only arise when collaboration or concerted effort occurs--that is, when the inventors have some open line of communication during or in temporal proximity to their inventive efforts." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004).

**Third**, the putative inventor "must ... provide corroborating evidence of any asserted contributions to the conception of the invention. Like conception of the entire invention, a contribution to conception is a mental act which cannot be accurately verified without corroboration." *Fina Oil and Chemical Co. v. Ewen*, 123 F.3d 1466, 1474 (Fed. Cir. 1997). The need for corroboration stems from a historical distrust of uncorroborated oral testimony of prior invention. *See Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998). Typically, corroboration takes the form of testimony of co-workers who are not named inventors, laboratory notebooks, or other documentary evidence of conception. Uncorroborated testimony from the alleged co-inventor is insufficient as a matter of law to meet the heavy burden of proving his case by clear and convincing evidence. *See Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir.1997). "The inventors as named in an issued patent are presumed to be correct." *Id.*

---

[5] "Conception exists when a definite and permanent idea of an operative invention, including every feature of the subject matter sought to be patented, is known. An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Pro-Mold & Tool Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1575 (Fed. Cir. 1996) (citations omitted).

The Amended Complaint failed all three of these essential requirements. First, as can be seen from the only two passages concerning Dr. Krauser's claims of co-inventorship, he did not plead to the conception of which aspects of the claims of the eight BioLok patents he contributed to:

> BioLok and/or its principal, Mr. Shaw, improperly filed its own applications for patents on a so-called "dental implant system" and "buttress thread implant," which were based entirely on Dr. Krauser's inventions, ideas, drawings and other intellectual property, including, for that matter, many internal aspects of his 476 Patent, without even referencing Dr. Krauser as the inventor. (Am. Compl. ¶ 28)

> Then, to make matters worse, beginning in 1999, BioLok (or its successors) filed applications for and obtained several other patents also based on Dr. Krauser's inventions, ideas, drawings and other intellectual property, including, without limitation, much of the subject matter of his 476 Patent (Am. Compl. ¶ 30)

Dr. Krauser simply presented conclusory allegations that BioLok's patents are "based on" his inventions and ideas including those in his '476 patent without any required specificity as to each claim element he purports to have contributed to the conception of.[6] This is patently deficient.

All of BioLok's patents were filed well after Dr. Krauser allegedly disclosed his invention to BioLok back in 1988 (Am. Compl., ¶¶ 30, 15-17) and they were directed to inventions made by BioLok – not by Dr. Krauser. Dr. Krauser's reference to his '476 patent is a red herring. The '476 Patent,[7] which is no longer in force, is directed to a longitudinally grooved cylindrical implant that has no externally threaded surfaces:

> "Field of the Invention
> This invention relates to dental implants used to form root analogues for the attachment of dental prostheses, and more particularly, to such a ***dental implant having no externally threaded surfaces***, particularly configured for use in areas of relatively low bone density." (Am. Compl. Ex E, col. 1, lines 5-12) (emphasis added).

---

[6] BioLok cannot even formulate an answer to the Amended Complaint without knowing specifically what he allegedly invented in the claims of the eight BioLok patents.

[7] The '476 Patent is the very same patent that Krauser asserted against BioLok in one of the two prior litigations that were settled under the 1996 Settlement Agreement. (Am. Compl. ¶ 27).

All of the claims of the '476 patent are directed to implants having a generally cylindrical (*i.e.* non-threaded) portion with a plurality of longitudinally extending grooves.[8]

None of BioLok patents, current products or 510(k) regulatory filings are directed to cylindrical implants having longitudinally extending grooves. Even a cursory review of the BioLok product information that Dr. Krauser attached as Exhibit D to his Amended Complaint confirms that none of those implants are cylindrical, as they all have external threads. (*See* Am. Compl., Ex. D.). And none of those implants has longitudinally extending grooves. *Id.* At bottom, Dr. Krauser's conclusory allegations that BioLok's patents, products and 510(k) regulatory filings are based on his original '476 patent ring hollow. His co-inventorship claims are facially implausible.[9]

Second, Dr. Krauser did not allege any facts showing any collaboration or communications between him and BioLok's named inventors after the February 1997 Release regarding any of Dr. Krauser's allegedly inventive contributions. Third, Dr. Krauser did not plead that there exists any corroborating evidence--documents or witnesses--contemporaneous with the time of his alleged co-inventions which independently substantiates his claims.

---

[8] Claim 1 of the '476 patent, for example, requires the implant to have "a generally cylindrical portion … including a plurality of longitudinally extending grooves in the surface thereof." (*See* claim 1, Am. Compl. Ex E, col. 10, line 63-col. 11, line 24). Similarly, claim 13 requires: "[a] plurality of circumferentially placed grooves extending in a longitudinal direction around said second cylindrical surface, said grooves extending along the length of said second cylindrical surface." (*See* claim 13, Am. Compl. Ex E, col. 12, line 58-col. 13, line 15). All of the claims of the '476 patent have one of these alternative claim limitations.

[9] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Since the subject matter of Dr. Krauser's allegations is his own conception of claim elements, this information is entirely within Dr. Krauser's possession and control. He does not need discovery from BioLok to know what elements he invented and when. The fact that he did not plead this information and did not attach any documentation showing his alleged contributions to the conception of each of the eight BioLok patents speaks volumes as to the lack of plausibility of his co-inventorship claims.

Once the Court discards Dr. Krauser's conclusory allegations of co-inventorship, which are not entitled to the presumption of truth, there are no pleadings left in the Amended Complaint "showing that [Dr. Krauser] is entitled to relief." Fed R. Civ. P. 8(a).[10] Because Dr. Krauser's Amended Complaint fails to specifically allege any inventive contribution to any of BioLok's patents, regulatory 510(k) filings or products, his claim for a declaration of inventorship must be dismissed. To the extent Dr. Krauser's claims of ownership of BioLok patents, current products or 510(k) regulatory filings arises from his claims of inventorship, his ownership claims must fail and should be dismissed as well.[11]

While the Amended Complaint recounts the events of distant past which were already twice litigated between the parties, and settled and released in 1996, Dr. Krauser did not allege any facts that would give rise to a claim that he is an owner or inventor of any of BioLok's patents, products and 510(k) filings, let alone facts sufficient to enable Defendants to frame a responsive pleading. His co-inventorship claim rings hollow and must be dismissed under *Iqbal*.

C.   **The Amended Complaint Does Not Allege Repayment Of Monies**

---

[10] A "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

[11] Dr. Krauser does not allege any facts that would give rise to an ownership interest in any of the BioLok patents other than his conclusory allegations that he is an inventor. Under U.S. patent law, ownership of an invention resides with each of the inventors absent a written agreement to the contrary. 35 U.S.C. §261.

### Received Under The Settlement Agreement, A Prerequisite For The Rescission Relief Requested

The Amended Complaint essentially seeks to rescind the Settlement Agreement and cause the license of certain rights in the '476 Patent (as well as other intellectual property) to revert to Dr. Krauser. If a party seeking rescission "has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible ...." *Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.,* 174 So.2d 614, 617 (Fla. 2d Dist. Ct. App. 1965).[12] Dr. Krauser never returned or offered to return the monies BioLok paid him under the Settlement Agreement. Florida law is clear that such an allegation is a prerequisite to such a cause of action. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1279 (11th Cir. 2004).

---

[12] "A prerequisite to rescission is placing the other party in status quo. ... Moreover, a party's right to rescind is subject to waiver if he retains the benefits of a contract after discovering the grounds for rescission. ... This principle ensures that a party who accepts the proceeds and benefits of a contract remains subject to the burdens the contract places upon him." *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306, 314 (Fla. 2000). *See also Manhattan Life Insurance Co. v. Burke,* 69 Ohio St. 294, 302-03 (1903) ("[N]o doubt exists, of the soundness of the general proposition that where a party to a compromise desires to set aside or avoid the same, and be remitted to his original rights, he must place the other party in *statuo quo* by returning or tendering the return of whatever has been received by him under such compromise ...[T]he petition should allege the fact of such return or tender, prior to, or at least contemporaneous with, the commencement of the suit.").

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice for failure to state a claim for which relief can be granted, together with an award of attorney's fees and costs.

Respectfully submitted,

**HAILE, SHAW & PFAFFENBERGER, P.A.**

By: /s/ Gary A. Woodfield
Gary A. Woodfield
Florida Bar No. 0563102
Attorneys for Defendants
660 U.S. Highway One, Third Floor
North Palm Beach, FL 33408
Phone: (561) 8627-8100
Facsimile: (561) 622-7603
E-mail: gwoodfield@haileshaw.com

*Attorneys for Defendants Biohorizons, Inc., BioLok International, Inc., and Biohorizons Implant Systems, Inc.*

15

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 6, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Gary A. Woodfield
Gary A. Woodfield, Esq.
Florida Bar No. 563102
HAILE, SHAW & PFAFFENBERGER, P.A.
660 U.S. Highway One, Third Floor
North Palm Beach, FL  33408
Phone: (561) 627-8100
Fax: (561) 622-7603
Email: gwoodfield@haileshaw.com
*Counsel for Defendants*

## SERVICE LIST
Jack T. Krauser v. Biohorizons, Inc., et al.
**CASE NO.: 9:10 CV 80454-KAM**
United States District Court, Southern District of Florida

**Ronald M. Gache, Esq.**
Broad and Cassel
One North Clematis Street,
Suite 500 West Palm Beach,
FL 33401
*Attorney for Plaintiff*