UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JACK T. KRAUSER, D.M.D., an individual,

Plaintiff,

v.

BIOHORIZONS, INC., a Delaware corporation, BIOLOK INTERNATIONAL, INC., a Delaware corporation, and BIOHORIZONS IMPLANT SYSTEMS, INC., a Delaware corporation,

Defendants.

CASE NO.: 9:10 CV 80454-MARRA

## DECLARATION OF ROY STEVEN BOGGAN

I, Roy Steven Boggan, declare and state as follows:

1. I joined BioHorizons Implant Systems, Inc. ("BioHorizons") in 1995 as an engineer and was promoted to the position of President in 1997 and President and Chief Executive Officer in 1999. I have served as the President and Chief Executive Officer of Defendants BioHorizons, Inc. ("BHI") and BioLok International, Inc. ("BioLok") since 2007. BHI is a holding company, and is the direct parent company of BioHorizons Implant Systems, Inc. BHI became an indirect parent company of BioLok in 2007. Prior to February 2007, BioLok was a separate company that marketed competing lines of dental implants.

2. I am providing this declaration in support of the motion for summary judgment filed by the Defendants in the above-captioned litigation. I have personal knowledge of the facts

stated herein, except as to facts stated upon my understanding, and as to those facts, I believe them to be true.

## Defendants' Corporate History and Organization

3. **BioLok International, Inc. ("BioLok")** is a Delaware Corporation formerly known as American Bio-Dental Corporation and is the corporate successor to Minimatic Implant Technology, Inc., a Florida corporation, ("Minimatic")which merged into BioLok in or around 1997. BioLok was acquired by an affiliate of HealthpointCapital, LLC in late 2006. BioLok is presently owned by BHI.

4. **BioHorizons Implant Systems, Inc. ("BioHorizons")** is a Delaware corporation involved in the design and manufacture of dental implants and related products, as well as medical products unrelated to dental implants. BioHorizons was incorporated in 1995 by Dr. Carl Misch and Professor Martha Bidez of the University of Alabama at Birmingham. BioHorizons began marketing its own dental implant systems in 1997. Affiliates of HealthpointCapital, LLC acquired a majority interest in BioHorizons in August 2006. BioHorizons's direct corporate parent is BioHorizons, Inc.

5. **BioHorizons, Inc. ("BHI")** is a Delaware Corporation founded in connection with the 2006 acquisition of BioHorizons by affiliates of Healthpoint Capital. It is a holding company that owns the stock of, among other entities, BioHorizons. BHI is the indirect parent company of BioLok.

## Growth from 1996 to the Present

6. After emerging from bankruptcy in 1997, I understand (and BioLok's audited financial statements reflect) that BioLok made substantial investments in research and

2

development and corporate acquisitions, and as a result, achieved significant growth. For the period from October 1997 through October 2006, BioLok's annual revenues grew from about $1.4 million to $9 million dollars.

7.      During that period, BioHorizons was a separate company that marketed competing lines of dental implants. BioHorizons' growth was even more dramatic: from June 30, 1997 through June 30, 2006, BioHorizons' annual revenues grew from $644,000 to $31 million dollars. Since 2006, BioHorizons' shareholders have invested approximately $140 million dollars in the company, and its annual revenues have grown (as of the end of 2011) to $96 million.

### Certain Features of Defendants' Dental Implants

8.      None of the Defendants currently manufacture or sell any threadless dental implants. At one time, BioLok marketed a threadless cylindrical implant, but discontinued doing so prior to 2007.

9.      Among others products, BioHorizons markets a product known as the BioHorizons Tapered Internal Implant System. All parts of the BioHorizons Tapered Internal Implant System are marketed under 510(k) clearances issued to BioHorizons. No part of the BioHorizons Tapered Internal Implant System is marketed under a 510(k) clearance issued to Minimatic or BioLok.

10.     BioHorizons Tapered Internal implants are available with a feature called "Laser Lok". Laser Lok consists of micro-etched horizontal grooves on the coronal portion of the implant that serve to impede downward growth of epithelial "gum" tissue and help avoid bone loss.

### Compensation Paid to Dr. Krauser Under the October Settlement Agreement

11. BioLok's corporate records include a Settlement Agreement dated October 16, 1996, among Minimatic, American Bio-Dental Corporation ("ABC"), and Dr. Krauser.

12. I have reviewed the October 16, 1996 Settlement Agreement ("OSA"). Two of the signatories to that agreement, Minimatic and ABC, are predecessor companies to BioLok.

*Common Stock Grant*

13. Section 6 of the OSA states:

"ABC shall issue one million of it's common stock to Jack T. Krauser within thirty (30) days of confirmation of the Debtors' Amended Plan, in addition to any other stock Krauser may be entitled to in connection with his general unsecured claim, which stock shall be issued on the effective date of the Debtors' Amended Plan. All shares delivered to Jack T. Krauser pursuant to this paragraph shall be restricted Rule 144 stock."

I understand that Dr. Krauser does not dispute that he received this common stock grant. *See* Exhibit A, 6/9/2011 Krauser Tr. 260:19- 261:2.

*Cash and Stock Dividend Payments Under Section 1*

14. Section 1 of the OSA states, in relevant part, as follows: "… Krauser's existing claims shall be liquidated, undisputed and allowed as general unsecured claims against Debtors' bankruptcy estates in the collective sum of $720,000." I further understand that Minimatic's "Second Amended Plan of Reorganization" (hereinafter, the "Bankruptcy Plan") was confirmed by court order on or about February 12, 2007. *See* Composite Exhibit B ("Debtors' Joint Second Amended Plan of Reorganization," and February 12, 1997 Order confirming same). I understand that pursuant to the approved Bankruptcy Plan, creditors were divided into twelve classes, and that Class 10 consisted of claims of general unsecured creditors with a claim of more than $2,000. *See* Exhibit B, Debtor's Joint Second Amended Plan of Reorganization at p. 10.

15. I also understand that pursuant to the approved Bankruptcy Plan, Class 10 general unsecured creditors with a claim of more than $2,000.00 were to receive "a cash dividend equal to 30% of the amount of their claim, over seventy-two months." *Id.* I further understand that these same Class 10 creditors were to receive "[i]n addition to the cash dividend ... a stock dividend, issued one share per dollar, on the remaining 70% of their allowed claim." *Id.* Therefore, I understand that in accordance with the approved Bankruptcy Plan, Dr. Krauser's general unsecured claim of $720,000 under Section 1 of the OSA was reduced to an obligation by BioLok (1) to make $216,000 in cash dividend payments over seventy-two months (30% of $720,000); and (2) to grant Dr. Krauser 504,000 shares of BioLok common stock (70% of 720,000). *Id.*

16. BioLok's corporate books and records reflect that BioLok fully paid the amounts due to Dr. Krauser under Section 1 of the OSA. Specifically, these books and records reflect that a BioLok stock certificate in the amount of 504,000 shares was issued to "Jack Krauser" on or about March 21, 1997. Exhibit C, Stock Certificate to Jack Krauser dated March 21, 1997. Further, BioLok's corporate books and records include copies of all of the cash dividend payment checks to Dr. Krauser under Section 1, and these reflect payments totaling $216,000. *See* Composite Exhibit D, BIOLOK 44722-44804.

*Payments Under Section 3*

17. Section 3(a) of the OSA states, in relevant part, as follows:

During the first two years after confirmation of Debtors' Amended Plan:

> (i)   0% of the total net sales of the Debtors, any subsidiary owner of the Debtors by merger or acquition [sic], between zero and $1,750,000.00 of all dental implant products set forth and described in the Debtors' current product catalog, a copy of which is attached hereto as "Exhibit B," as well as any other dental implant products of any kind or nature whatsoever which are designed and/or used for dental implantology which are sold by the Debtors, any subsidiary

5

thereof or any successor owner of the Debtors by merger or acquition [sic], now or in the future, whether they be listed for sale or not in any current or future Minimatic, ABC, any subsidiary's thereof or any successor owner of the Debtors by merger or acquition [sic] catalog. All such dental implant items defined above are hereinafter collectively referred to as the "Products" ....

(ii)  2% of the total net sales of the Debtors, any subsidiary thereof or any successor owner of the Debtors by merger or acquisition of the Products above $1,750,000.00

18. Section 3(b) of the OSA states, in relevant part, as follows:

During years 3 through 10, inclusive, following confirmation of Debtor's Amended Plan: 2% of all total net sales by the Debtors, any subsidiary thereof or any successor owner of the Debtors by merger or acquisition, of the Products, irrespective of the net sales amount.

19. I am generally aware that Dr. Krauser is alleging in this litigation that BioLok did not pay Dr. Krauser what he should have been paid under Section 3 of the OSA. In or about December 2009, Dr. Krauser was tendered a check in the amount of $71,780.83 as part of a conciliatory effort to cure any breaches alleged by Dr. Krauser. Dr. Krauser refused to accept this check. Had Dr. Krauser cashed this check, the corporate books and records of the Defendants reflect that Dr. Krauser would have received total cash compensation under Section 3 of the OSA in the amount of approximately $668,071.46. *See* Exhibit E, BioLok spreadsheet recording payments under OSA.

_____
Roy Steven Boggan